## BACON v. NEW ENGLAND ORDER OF PROTECTION.

(Circuit Court, D. Vermont. June 16, 1903.)

1. LIFE INSURANCE — TEMPERATE HABITS—USE OF ALCOHOLIC STIMULANTS—MISREPRESENTATION—SUFFICIENCY OF EVIDENCE.

An applicant for life insurance stated that he was temperate in habits, and answered the question, "Do you use alcoholic stimulants," "No." The evidence showed that he had drunk intoxicating liquors to excess at intervals from his youth, and that he had been in the medical examiner's hospital for treatment for inebriety. The medical examiner testified that the applicant had promised to reform, and he thought he had done so, and wrote the answers to the questions for him. A nurse at the hospital testified to his drinking twice about that time. *Held*, that as the representation and answer to the question referred to the present time, a finding that there was no misrepresentation was sustained by the evidence.

2. SAME—INTOXICATION—WHAT CONSTITUTES.

An applicant for life insurance answered the question, "Were you ever intoxicated," "No." Many witnesses testified to his having been hilarious and noisy, and walking with difficulty from drinking, and to fast driving and inability to sit up straight when driving, though the witnesses had never seen him when he could not drive. Some witnesses testified to his acting as if crazy with liquor at times, and a physician swore to finding him in a state of acute alcoholism when examining him for commitment to a retreat. *Held*, that a finding that there was no misrepresentation was sustained by the evidence.

At Law.

Clarke C. Fitts and James F. Hooker, for plaintiff.

Eleazer L. Waterman and Ernest W. Gibson, for defendant.

WHEELER, District Judge. This is an action upon a policy of life insurance issued to the intestate upon an application and medical examination signed by him, warranted to be true, and made the basis

of the insurance, wherein he stated, "I am a white person temperate in habits;" and answered questions: "Do you use alcoholic stimulants? No. Were you ever intoxicated? No." The defense is that this statement and these answers were so untrue that the policy was void, and after verdict for the plaintiff the defendant has moved to have it set aside as against the evidence.

The intestate was a young man, and the testimony showed that he had drunk intoxicating liquors to excess at intervals from his youth. The medical examiner testified that he had been acquainted with him about three years at the time of his examination, and had him at his hospital for treatment, and he had promised to reform, and he thought he had done so, and wrote the answers to the questions for him, and signed the examination with him, but a nurse at the hospital testified to his drinking twice at about that time.

The statement as to being temperate in habits and the answer to the question as to use of alcoholic stimulants referred to that time, and reformed habits might then have been temperate, and the use merely occasional, as the jury might infer or not, according to the weight they should give to the testimony. Here was a question of fact, which men might differ about, and which the law requires that a jury shall decide.

The remaining question, as to whether he had ever been intoxicated, covered his whole life up to that time. Many witnesses testified to his being hilarious and noisy, and walking with difficulty from drinking when out with young people; to fast driving, and inability to sit up straight when driving, from the same cause; some to his acting as if crazy with liquor at times; and a physician testified to finding him in a state of acute alcoholism when examining him for commitment to a retreat. The occurrences were not in dispute, but only what they amounted to as described by the witnesses.

Dr. Ray, in his medical Jurisprudence (section 527), speaks of this state in degrees, as to the first of which he says, "The ideas are only uncommonly vivacious; consequently the empire of the understanding over the actions is so little weakened that the individual perfectly retains the consciousness of his external condition, and in fact may be said to be in complete possession of his senses;" as to the second, "A man has still the use of his senses, though they are remarkably enfeebled, but he is entirely beside himself, memory and judgment having abandoned him; he acts as if he lived only for the present, with no idea of the consequences of his actions, nor their relation to one another;" and as to the last, that "he not only loses the possession of his reason, but his senses are so enfeebled that he is no longer conscious of his external relations."

The testimony showed the condition of the insured to have been at many times within this description of the first degree, and perhaps within that of the second degree, but not ever within that of the last degree. The state of alcoholism may have resulted from continuous use to excess without great intoxication at any time as well as from one debauch, and the testimony did not show clearly whether this was before the medical examination. And the witnesses who testified to his condition when driving said on cross-examination that

they never saw him when he could not drive. The jury were instructed that, as no extent of intoxication was specified, prior substantial and real intoxication, such as he would know to have previously existed when he signed the statements and answers, would be required to be shown in order to avoid the policy on this account. Here was room for the exercise of the judgment of the jury as to whether previous intoxication had to 'the required extent been made out. The evidence was all one way as to there having been some intoxication, but not as to the serious extent of it; as to that opinions might widely differ. The question here is not whether the court would agree with, or differ from, the verdict, but whether the court can see that the verdict is not the result of weighing the evidence. As this was a matter of judgment, a difference of opinion, if it existed, would not show that the judgment had not been fairly exercised in reaching the opposite conclusion.

In N. W. Insurance Co. v. Muskegon Bank, 122 U. S. 501, 7 Sup. Ct. 1221, 30 L. Ed. 1100, the warranty was that Comstock, "the applicant, is not, and will not become, habitually intemperate." Upon much testimony of sprees and excesses, before and after the application, and of intervals of soberness, during one of which the application was made, the circuit court, refusing requests to charge as to the effect of particular instances, left it to the jury to say whether the warranty was broken and the policy defeated. As to this procedure Mr. Justice Miller, in delivering the opinion of the court, said:

"The whole case turned, so far as the jury was concerned, upon the true definition of the words, 'habitually intemperate,' taken in connection with the testimony on the subject at these two different periods. The plaintiff was not bound to prove that the assured was temperate or that he was a temperate man, but the defendant was bound to prove not only that Comstock was intemperate at those periods, but that he was habitually so. This it was bound to do by such a preponderance of testimony as should satisfy the jury that at one of these periods or the other he was habitually intemperate. We do not know of any established legal definition of those words. As they relate to the customs and habits of men generally in regard to the use of intoxicating drinks, and as the observation and experience of one man on that subject is as good as another of equal capacity and opportunities, their true meaning and significance would seem to be a question addressed rather to the jury than to the court."

And again, speaking further of the questions involved, he said:

"They are emphatically questions of fact, which it is the province of a jury to decide, and in regard to which they are or ought to be as capable of making a decision as the court or anybody else."

So here the questions relate to the habits, customs, and understanding of men in relation to the same subject, and are equally appropriate for the decision of a jury. Their finding upon it cannot be disturbed without interfering with their prerogative, and depriving the plaintiff of the right to their judgment.

Motion overruled; judgment on verdict.